UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES ROY SYLVESTER, JR.,

                     Petitioner,                  Criminal Case Number 03-20008
                                           Civil Case Number 10-15151
v.                                              Honorable David M. Lawson

UNITED STATES OF AMERICA,

                     Respondent.
_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner James Roy Sylvester, Jr. was convicted by a jury of drug trafficking and weapons offenses and sentenced on May 22, 2006 to a total prison term of 35 years. His convictions and sentences were affirmed on direct appeal. *United States v. Sylvester*, 330 F. App'x 545 (6th Cir. 2009). Sylvester then filed the present motion to vacate his sentence under 28 U.S.C. § 2255, alleging that (1) his rights under the Speedy Trial Act were violated and his trial and appellate counsel were ineffective in addressing that claim; (2) his trial and appellate counsel were ineffective by failing to file a motion to suppress the evidence seized from a suitcase he provided to coconspirators Vicki Loos and Jose Escobar for transporting illegal drugs; (3) his trial and appellate counsel were ineffective by failing to argue that his rights under the Fifth Amendment were violated where previously suppressed evidence was introduced at trial; and (4) his appellate counsel was ineffective by failing to argue that probable cause did not exist to search his home. The government has filed a response to the petition. For the reasons discussed below, the Court finds that the petitioner is not entitled to relief and therefore will deny his motion to vacate his sentence under 28 U.S.C. § 2255.

I.

The trial record establishes the following facts.  Beginning in 2001, Sylvester arranged to transport large quantities of cocaine and other controlled substances from California to Michigan. Sylvester recruited Jose Escobar and Vicky Loos to take Greyhound buses to California with suitcases that Sylvester provided containing money to purchase cocaine.  And, while in California, Escobar and Loos would meet with Calvin Ayers and Frederick Wyatt to exchange the money for drugs.  They would then place the drugs in the suitcases and bring them to Sylvester in Saginaw, Michigan.  They made at least four trips transporting large quantities of cocaine.

On February 24, 2003, an investigator for the Nebraska State Patrol noticed two suspicious suitcases in the checked baggage area at a bus station in Omaha, Nebraska.  The luggage was padlocked and contained tags with three names: James Sylvester, Vicky Loos, and Jose Escobar. The investigator contacted Loos and Escobar and, following a search, found a total of five kilograms of cocaine in the suitcases.

Loos agreed to cooperate.  She gave the investigator access to various documents in her purse, including a card with contact information for Calvin Ayers, a note from Sylvester that gave Loos and Escobar the false names they were to use during the trip, and receipts for a hotel room in Los Angeles, California.

Loos agreed to participate in a controlled delivery in Saginaw, Michigan.  On February 25, 2003, Loos flew to Michigan, met Sylvester at the bus station in Saginaw, and delivered the luggage containing the drugs to him. Drug Enforcement Administration (DEA) agents arrested Sylvester, after he placed the luggage containing the drugs into his vehicle.  Officers discovered 20 grams of crack cocaine in two packages in Sylvester's pants pockets during the booking process.

-2-

On February 25, 2003, officers submitted an application for a warrant to search 4041 Hess Street, Saginaw, Michigan, Sylvester's home.  The affidavit in support of the search warrant stated in relevant part:

> 3.  The FACTS establishing probable cause or the grounds for the search are:
> A.   That [Detective Kevin Conklin] is a police officer with the Michigan State Police, currently assigned to BAYANET (Bay Area Narcotics Enforcement Team) investigating drug crimes, and has been a police officer since May of 1995.
> B.  On February 24, 2003, luggage with the name of Ms. Vicky Loos attached to the luggage was found at the Omaha Nebraska bus terminal.  Officers from the Nebraska State Police were given consent by Ms. Loos to search her luggage, as part of a drug interdiction.
> C.  Search of the baggage revealed approximately five kilograms of cocaine.
> D. The ultimate destination of the cocaine is 4041 Hess Street, Saginaw, Michigan.
> E.  4041 Hess Street, Saginaw, Michigan, is the listed residence of James Roy Sylvester, Jr., with a date of birth (DOB) of 3/51/59.
> F.  The baggage of Vicky Loos has now arrived in Saginaw Michigan, where Mr. James Roy Sylvester, Jr. was observed by Trooper Conklin, affiant, placing the bags containing the cocaine into his, Sylvester's car.  Mr. Sylvester was arrested at the bus terminal and was found to have other amounts of cocaine on his person.

Page ID 124-126.  A state court judge signed the search warrant on the same date.

DEA agents executed the search warrant on February 25, 2003.  Agents found a loaded stolen 9 mm. semi-automatic handgun in Sylvester's bedroom, 187.4 grams of marijuana, drug paraphernalia, financial records, ammunition, and four long guns propped against the wall in the kitchen.

DEA agents returned to Sylvester's home on February 26, 2003.  Corine Sylvester, the petitioner's mother, consented to a search of a Cadillac registered in her name.  Agents found a bag containing $41,040 in cash in the trunk of her vehicle as well as records noting large amounts of money (over $50,000 in one withdrawal) deposited and then withdrawn from a safe deposit box. They also found 46 bottles of various prescription medications in the petitioner's home written to

several people that did not live there.  Additionally, agents located $11,600 in $100 bills located in a pocket in Sylvester's coat.

On February 26, 2003, a federal grand jury returned an indictment charging Sylvester with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II); and possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii).  The grand jury returned eight superseding indictments between February 2003 and January 2005, which added three additional co-defendants, Calvin Ayers, Corine Sylvester, and Frederick Wyatt, to the case.  The final superseding indictment charged Sylvester with thirteen counts related to drug trafficking and firearm possession.

On February 5, 2004, Sylvester filed a motion to suppress the evidence seized from his home, arguing that the affidavit contained false statements and did not establish probable cause.  The Court denied the motion on April 28, 2004, following a hearing, holding that the search warrant was supported by probable cause even without the challenged statements.  On November 19, 2004, Sylvester filed a motion to dismiss the charges against him arguing that he had not been brought to trial within the time required by the Speedy Trial Act.  The Court denied the motion on June 16, 2005.

All of the defendants except Sylvester entered into plea agreements.  Trial began on September 13, 2005 and, on September 21, 2005, the jury found Sylvester guilty of possession with intent to distribute five kilograms or more of cocaine, possession with intent to distribute five grams or more of cocaine base, possession of a firearm in furtherance of a drug trafficking offense, felon in possession of a firearm, possession of marijuana, possession with intent to distribute oxycodone,

diazepam, hydrocodone, and codeine, using interstate travel to acquire and transport five kilograms of cocaine, personally traveling in interstate commerce to acquire five kilograms of cocaine, and conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine. His custody sentence totaled 35 years.

On appeal, Sylvester argued that the district court erred by denying his motion to suppress certain post-arrest statements, his rights under the Speedy Trial Act were violated, and his Sixth Amendment right to a speedy trial was violated. The court of appeals rejected those arguments. No other appellate issues were raised. Sylvester filed the present motion under 18 U.S.C. § 2255 to vacate his sentence, raising the four issues listed above. The government filed a response in opposition.

II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or the conviction "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

In attacking his convictions, Sylvester raises four substantive issues: (1) he was not brought to trial within the time required by the Speedy Trial Act; (2) the evidence seized from the suitcase he provided to Loos and Escobar should have been suppressed; (3) his rights under the Fifth Amendment were violated where previously suppressed evidence was introduced at trial; and (4) probable cause did not exist to search his home. Of course, Sylvester is prevented from raising the legal issues that underlie each of these claims. They were not raised earlier by any of his lawyers during trial or on appeal, and the time to raise them has expired. A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). In *United States v. Frady*, 456 U.S. 152 (1982), the Supreme Court observed:

> Once the defendant's chance to appeal has been waived or exhausted, however, we are entitled to presume he stands fairly and finally convicted, especially when, as here, he already has had a fair opportunity to present his federal claims in a federal forum. Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal.

*Frady*, 456 U.S. at 164-65; *accord Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (stating that "respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal"). Where a defendant fails to assert claims on direct appeal and attempts to raise them in a § 2255 motion, "he also must show either that (1) he had good cause for his failure

to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. Sylvester has argued neither of those contentions.

However, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates

-7-

both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687. "A failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonable representation and therefore falls below Sixth Amendment standards for effective assistance of counsel." *Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999).

A.

Sylvester's argument that the Court fumbled the Speedy Trial Act ruling — and that trial and appellate counsel failed to home in on the correct argument — has some merit. He cites *United States v. Rojas-Contreras*, 474 U.S. 231 (1985), for the proposition that a superseding indictment that does not add new defendants does not reset the speedy trial clock. Based on that premise, he contends that more than 70 days passed between his arraignment on February 26, 2003 and November 19, 2004 when he filed his motion to dismiss, and he insists that none of the eight superseding indictments changes that result. The government responds by arguing that Sylvester misreads *Rojas-Contreras*, and notes that the court of appeals gave full review to the Speedy Trial Act arguments and found them wanting. But on direct appeal, the court observed that the defendant never presented his argument — either before trial or on appeal — focusing on the time frame between the beginning of the case and the fourth superseding indictment, which added new defendants on October 27, 2003, even when appellate counsel was invited to do so in letter briefs. *Sylvester*, 330 F. App'x at 549. Although the court found the argument "troublesome," it concluded that "[b]y any conventional measure of forfeiture, Sylvester has forfeited this argument." *Ibid.* That

language tees up an ineffective-assistance-of-counsel claim, if there is any merit to the underlying issue and the petitioner can show prejudice.

### 1.

To satisfy the defective performance prong of the *Strickland* test, the petitioner must show that trial or appellate counsel missed a meritorious argument under the Speedy Trial Act. The failure to file a meritless motion does not constitute defective performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (reiterating that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" in order to avoid a finding of deficient performance under *Strickland*).

Although the Court filed a detailed opinion denying the motion to dismiss based on the arguments that counsel presented before trial, a thorough reexamination of the application of the Speedy Trial Act to this case and its numerous superseding indictments is in order. The Speedy Trial Act of 1974, as amended in 1979, 18 U.S.C. § 3161 *et seq.*, "'gave effect to a Federal defendant's right to a speedy trial under the Sixth Amendment and acknowledged the danger to society represented by accused persons on bail for prolonged periods of time.'" *Rojas-Contreras*, 474 U.S. at 238 (1985) (Blackmun, J., concurring) (quoting H.R. Rep. No. 96-390, p.3 (1979), U.S. Code Cong. & Admin. News 1979, pp. 805, 807). "To accomplish these goals, the Act provides strict time limits for each stage of the criminal trial process." *Ibid.* If a Court fails to comply with

the provisions of the Speedy Trial Act, then "such charge against that individual contained in [the] complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1).

"The Act, as amended, requires that a defendant be brought to trial within 70 days of his first appearance through counsel." *Rojas-Contreras*, 474 U.S. at 238-39 (Blackmun, J., concurring) (citing 18 U.S.C. § 3161(c)(1)). The seventy-day period begins to run from the later of two dates: when the defendant is indicted, or when the defendant first "appear[s] before a judicial officer." 18 U.S.C. § 3161(c)(1). The Sixth Circuit construes the term "appear" to mean "arraignment," that is, when the defendant enters a not-guilty plea. *See United States v. O'Dell*, 154 F.3d 358, 360-62 (6th Cir. 1998); *United States v. Blackmon,* 874 F.2d 378, 380 (6th Cir. 1989). However, the Act also lists nine categories of events, which stop the clock when calculating the seventy-day period; these periods of "excludable delay" suspend the Speedy Trial Act clock for prescribed periods. *See* 18 U.S.C. § 3161(h). Additionally, under 18 U.S.C. § 3161(h)(7), a period of delay which is excludable under the Speedy Trial Act as to one defendant applies to all co-defendants. *United States v. Holyfield*, 802 F.2d 846, 848 (6th Cir. 1986); *United States v. Snelling*, 961 F.2d 93, 95 (6th Cir. 1991); *Blackmon*, 874 F.2d at 380.

Sylvester, relying on *United States v. Rojas-Contreras*, argues that this court erred by finding that the filing of a superseding indictment restarts the speedy trial clock. He is partly correct.

In *Rojas-Contreras*, the Court considered whether the filing of a superseding indictment restarted the 30-day period prohibiting commencement of trial. The defendant, charged with illegal reentry, argued that the 30-day period should be restarted following the filing of a superseding indictment that was identical to the original indictment except for the date of the illegal reentry. The Court, relying on the language of the statute, disagreed. Justice Blackmun, concurring, explained:

-10-

> In light of Congress' intent to bring defendants quickly to trial, it would make little sense to restart both the 30-day and 70-day periods whenever there is a superseding indictment. Frequently, a superseding indictment is used to drop charges or parties or, as here, to make a minor correction, leaving the charges and the evidence necessary to defend against them unaffected. These kinds of changes should not create a need for further preparation time; indeed, in some instances, superseding indictments may lessen the defense burden. Where a superseding indictment of this type is issued, the Court's holding today permits the defendant to be brought to trial without unnecessary delay.

*Id.* at 560.

However, neither the majority nor the concurrence in *Rojas-Contreras* stated that a superseding indictment may *never* restart the speedy trial clock. And, absent evidence of bad faith or unreasonable delay, courts have generally restarted the speedy trial clock if the superseding indictment adds new defendants to the case. *See Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant.") (citing 18 U.S.C. § 3161(h)(7)); *Blackmon*, 874 F.2d at 380 ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest co-defendant."). That is because "not allowing the STA clock to restart upon addition of a codefendant might result in the STA being used as a vehicle for requiring the government to prosecute codefendants piecemeal." *United States v. Chen Chiang Liu*, 631 F.3d 993, 998 (9th Cir. 2011) (citations omitted).

The fourth, sixth, and seventh superseding indictments added new defendants to this case. The defendant does not argue, and the Court does not find any evidence to suggest, that the government acted in bad faith or unreasonably delayed filing those indictments. Therefore, the Court correctly concluded that those indictments restarted the speedy trial clock.

-11-

However, the Court also concluded that the second, third, fifth, and eighth superseding indictments also restarted the speedy trial clock. Those indictments added new charges, but not new defendants, to the case. The Court should not have calculated the elapsed time under the Speedy Trial Act by resetting the clock for the charges in those supplemental pleadings that merely had been carried over. That is because "[t]he filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment or any offense required to be joined under double jeopardy principles." *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) (citing *United States v. Gonzalez*, 897 F.2d 1312, 1316 (5th Cir. 1990) ("The filing of a superseding indictment does not affect the speedy-trial clock for offenses charged in the original indictment.")); *see also United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008) ("[T]he filing of a superseding indictment does not reset the speedy-trial clock for offenses charged, or required to be joined with those charged, in the original indictment."); *United States v. Marshall*, 935 F.2d 1298, 1302 (D.C. Cir. 1991) ("As a general rule, the filing of a superseding indictment does not affect the speedy trial timetable for offenses either charged in the original indictment or required under double jeopardy principles to be joined with such charges."); *United States v. Thomas*, 788 F.2d 1250, 1258 (7th Cir. 1986) ("The superseding indictment does not affect the running of the time on the three charges that were in the original indictment as well as the superseding indictment."); *United States v. Berry*, 90 F.3d 148, 151 (6th Cir. 1996) (holding that a subsequent indictment does not restart the thirty-day speedy trial clock but rather "tolled [it]. When the original indictment was dismissed, the thirty-day period again continued to run; it did not begin anew. The second indictment was then filed before the thirty-day period expired. Therefore, the filing of the second indictment, even though filed after thirty days following defendant's arrest, did not violate his rights under the Speedy Trial Act").

-12-

Rather than restarting the speedy trial clock, the Court should have started separate speedy trial clocks for the new charges.

The petitioner focuses on the 119 calendar days that elapsed between February 26, 2003 (the date of filing the indictment and first superseding indictment) and July 24, 2003 (the date when he filed a motion for new counsel). Sylvester argues that more than 70 days elapsed on the speedy trial clock between those time periods. He argues that the Court should have dismissed the charges in the first and second superseding indictments. To show why requires a separate analysis for the charges contained in the indictment, first superseding indictment, and second superseding indictment.

a.

The speedy trial clock began to count down on February 26, 2003 when the government filed an indictment and first superseding indictment and the petitioner appeared before the magistrate judge for arraignment. *See* 18 U.S.C. § 3161(c)(1). The indictment charged the petitioner with two counts: possession with intent to distribute 500 grams or more of cocaine, and possession with intent to distribute five grams or more of crack cocaine. The first superseding indictment contained the same charges, but clarified that Sylvester *knowingly* possessed the narcotics. The clock immediately stopped on February 26, 2003 because the government filed a motion for detention; it resumed on March 3, 2003 when the magistrate judge decided the motion and denied bond. *See* 18 U.S.C. § 3161(h)(1)(D). A total of 14 days then elapsed between March 3, 2003 and March 18, 2003.

On March 18, 2003, the Court excluded the time between March 18, 2003 and May 4, 2003 under 18 U.S.C. § 3161(h)(8)(A) because the petitioner obtained new counsel and requested additional time to review discovery and to consider whether to file any pretrial motions. Sixty-five

-13-

days then elapsed between May 4, 2003 and July 9, 2003, stopping when counsel for the petitioner filed a motion to withdraw and the petitioner filed a motion to appoint counsel.  As of the petitioner's motions, 79 days had already elapsed on the speedy trial clock.

The clock started again when the Court struck the petitioner's motions on July 16, 2003 because the motions did not conform with the local rules.  An additional six days elapsed on the speedy trial clock between July 9, 2003 and July 16, 2003 when the government filed a motion to clarify the status of defense counsel, and a later motion to adjourn trial.  By then, a total of 85 days had elapsed on the speedy trial clock.

The Court entered an order allowing defense counsel to withdraw on August 20, 2003, and excluded additional time from the Speedy Trial Act calculation through September 12, 2003 so new counsel could be engaged.  And on September 9, 2003, the magistrate judge entered an order excluding additional time through November 6, 2003 to allow the petitioner's new lawyer to prepare.  Then, on October 27, 2003, the government filed a fourth superseding indictment, which added a new defendant to the case, thereby restarting the speedy trial clock.  But by that time, it was too late; a total of 85 days had already elapsed on the original charges, beyond the 70 days allowed under the Speedy Trial Act.  Had the petitioner moved for dismissal on that basis, the Court likely would have dismissed the charges in the first superseding indictment.

b.

The government filed a second superseding indictment against the petitioner on April 9, 2003.  The second superseding indictment contained the same charges as the indictment and first superseding indictment, but added an additional charge of possession of a firearm in furtherance of

-14-

a drug trafficking offense in violation of 18 U.S.C. § 924(c). The petitioner's trial on that new charge did not commence within seventy days, either.

The speedy trial clock began on the firearm charge on April 16, 2003 when the petitioner was arraigned on the second superseding indictment. 18 U.S.C. § 3161(c)(1). However, the Court had previously excluded the time between March 18, 2003 and May 4, 2003 under 18 U.S.C. § 3161(h)(8)(A) because the petitioner obtained new counsel and requested additional time to review discovery and to consider whether to file any pretrial motions. The clock started again on May 4, 2003 and 65 days then elapsed before counsel for the petitioner filed a motion to withdraw and the petitioner filed a motion to appoint counsel.

The clock started again when the Court struck the petitioner's motions on July 16, 2003 because they did not conform with the local rules. An additional six days elapsed on the speedy trial clock between July 9, 2003 and July 16, 2003 when the government filed its motion to clarify defense counsel's status. When the government filed its motion, a total of 71 days had elapsed on the speedy trial clock. The firearm charge would have been subject to dismissal had the proper argument been made.

None of these issues were discussed by trial counsel in the motion to dismiss or by appellate counsel on appeal. Because there is merit to the contention that a Speedy Trial Act violation occurred, the petitioner makes a credible showing of defective performance by his attorneys.

2.

Nonetheless, the petitioner is not entitled to relief, because he has not made a sufficient showing of prejudice, meaning harm to him or his case. How could that be, one might ask, since the remedy for a Speedy Trial Act violation is dismissal of the case? But, using the term "prejudice"

-15-

in another way, when there is a violation of the Act, the Court has the option of dismissing the charges with or without prejudice. *See* 18 U.S.C. § 3161(a)(2); *United States v. Myers*, 666 F.3d 402, 404 (6th Cir. 2012). A dismissal without prejudice would permit the government to re-indict the petitioner and proceed to trial. *See United States v. Turner*, 602 F.3d 778, 786 (6th Cir. 2010).

When deciding whether the dismissal should be with or without prejudice, the Court considers three factors: (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; and (3) the impact of re-prosecution on the administration of the Speedy Trial Act and on the administration of justice. *United States v. Moss*, 217 F.3d 426, 430 (6th Cir. 2000) (citing 18 U.S.C. § 3162(a)).

As to the first factor — the seriousness of the offenses — "drug and firearm charges are serious offenses when considering whether to dismiss with or without prejudice." *Milligan v. United States*, 213 F. App'x 964, 965 (11th Cir. 2007) (citing *United States v. Williams*, 314 F.3d 552, 559 (11th Cir. 2002)); *see also Moss*, 217 F.3d at 431 ("This circuit has categorically labeled drug offenses as serious."); *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002) ("The district court considered possession of a firearm by a felon . . . to be serious . . . and we agree."). This factor therefore would have weighed against dismissing the charges with prejudice.

The second factor — the facts and circumstances that led to the violation — also would not have favored dismissal with prejudice. There is no evidence that the Speedy Trial Act violation resulted from prosecutorial bad faith or from any attempt to take tactical advantage of a delay. Instead, the delay was the result of a complicated criminal investigation, the defendant's frequent changes in counsel, and the trial court and prosecution's misunderstanding of the requirements of the Speedy Trial Act. "Where there is no affirmative misconduct by either party, the court's

-16-

conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion." *United States v. Pierce*, 17 F.3d 146, 149 (6th Cir. 1994); *see also United States v. Howard*, 218 F.3d 556, 561 (6th Cir. 2000) ("[T]he district court's error in this case was a good-faith misinterpretation of the Speedy Trial Act's requirements that resulted in a relatively short delay of the trial."). The second factor would have weighed in favor of dismissing the charges without prejudice.

The third factor — the impact of re-prosecution on the administration of justice — also would have weighed against dismissing the charges with prejudice. "The main consideration that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay, and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Howard*, 218 F.3d at 562 (internal citations and quotation marks omitted).

The petitioner argues that the delay depleted his finances, two witnesses died, he was cut off from his family and friends, and the delay caused him anxiety and stress. However, the petitioner was held on eight other charges at the time of the violation and therefore cannot show prejudice resulting from his loss of liberty. *United States v. Taylor*, 487 U.S. 326, 341 (1988) ( observing that because the "respondent was being held to answer not only for the drug charges but also on a valid bench warrant issued after he did not appear, neither does there seem to have been any additional restrictions or burdens on his liberty as a result of the speedy trial violation"). Moreover, the Court previously concluded that the death of the two witnesses — the petitioner's grandfather and a man named Marvel Wooden — did not prejudice the petitioner and Sylvester has offered no new evidence to suggest that the Court's previous finding was in error. And, as discussed already, there

-17-

is no evidence that the government engaged in prosecutorial misconduct or attempted to take tactical advantage of a delay. This factor would not have favored dismissing the charges with prejudice.

If Sylvester's trial and appellate counsel had litigated the petitioner's Speedy Trial Act claim adequately, the Court would have dismissed the charges only without prejudice. The petitioner has made no showing that the government would have thrown in the towel at that point. To the contrary, the government likely would have re-indicted the petitioner on the same charges. "Because the outcome of the proceedings would not have been different had counsel moved to dismiss the indictment, petitioner has not shown prejudice" and therefore his claim of ineffective assistance of counsel is without merit. *Chambliss v. United States*, 384 F. App'x 897, 899 (11th Cir. 2010); *see also McAuliffe v. United States*, 514 F. App'x 542, 546 (6th Cir. 2013) ("McAuliffe has not demonstrated that, but for his trial and appellate attorney's unprofessional errors, the district court or this court on direct appeal would have ordered dismissal of the prosecution with prejudice based on a Speedy Trial Act violation, thereby changing the result of the proceeding."); *Mulligan v. United States*, 213 F. App'x 964, 965 (11th Cir. 2007) ("Milligan has failed to establish that his trial counsel's failure to file a motion to dismiss prejudiced him. The district court would have likely dismissed the charges without prejudice, and the case would have been refiled."). The petitioner is not entitled to relief on this claim.

B.

Next, Sylvester argues that his trial and appellate counsel were ineffective by failing to challenge at his trial the introduction of the evidence found in the luggage, even though it was suppressed as to Loos and Escobar. Sylvester incorrectly frames his argument as a claim under the Fifth Amendment, but the governing law is found under the Fourth Amendment. *Gov't of Virgin*

-18-

*Islands v. Berne*, 412 F.2d 1055, 1059 (3d Cir. 1969) (noting that "the Fifth Amendment applies only to 'evidence of a testimonial or communicative nature', whereas 'the overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion'" (quoting *Schmerber v. California*, 384 U.S. 757 (1966))).

When a petitioner "claims that his counsel was ineffective because counsel failed to litigate a Fourth Amendment claim, he must also show 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.'" *United States v. Soto*, 780 F.3d 689, 698-99 (6th Cir. 2015) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Sylvester has not made that showing here.

The petitioner reasons that evidence suppressed as to one party should have been suppressed against all parties. But that is not necessarily so. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). "And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." *Ibid.* (internal citations omitted).

To claim rights under the Fourth Amendment, a person must have a legitimate expectation of privacy in the property searched or seized. *Id.* at 143. A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy and (2) if society is prepared to recognize

-19-

that expectation as objectively reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967). "[M]ere ownership of an item searched or seized does not establish a legitimate expectation of privacy; the Supreme Court has 'emphatically rejected the notion that 'arcane' concepts of property law ought to control the ability to claim the protections of the Fourth Amendment.'" *United States v. Ocampo*, 402 F. App'x 90, 96 (6th Cir. 2010); *see also Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003) ("[O]wnership alone does not justify a reasonable expectation of privacy. The Supreme Court has consistently held that privacy interests are not coterminous with one's property rights.") (citing *United States v. Savucci*, 448 U.S. 83, 91 (1980)). Instead, "[i]n analyzing whether a subjective expectation of privacy is objectively reasonable, this court considers a number of factors: (1) whether the defendant was legitimately on the premises; (2) his proprietary or possessory interest in the place to be searched or the item to be seized; (3) whether he had the right to exclude others from the place in question; and (4) whether he had taken normal precautions to maintain his privacy." *United States v. Dillards*, 438 F.3d 675, 682 (6th Cir. 2006) (citing *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000)). Other courts have also considered the defendant's desire to keep the items seized private and the defendant's presence or absence at the time of the search. *United States v. Burney*, 937 F.2d 603, at *4 (4th Cir. 1991) (citations omitted).

Sylvester may have owned the luggage searched, but ownership alone is insufficient to establish that his rights under the Fourth Amendment were violated. *Ocampo*, 402 F. App'x at 96. Sylvester has not presented any evidence to establish that he had a subjective expectation of privacy that was objectively reasonable in luggage that he loaned to someone else. There is no evidence that Sylvester had the ability to assert control over the suitcase after allowing Loos and Escobar to use the luggage on their trip to California. They returned from California alone with the luggage in their

-20-

possession. Nor is there any evidence that Sylvester locked the suitcase before giving it to them, that he asked them not to open the suitcase, or that he otherwise took steps to preserve his privacy with regard to the suitcase. *See id.* at 97. Instead, Loos had the key to the luggage on her key ring.

Sylvester's Fourth Amendment rights were not violated when the officers searched the luggage because he did not have a legitimate expectation of privacy in the suitcase at the time. Consequently, his rights under the Fourth Amendment were not violated when the government introduced the evidence from that search against him at trial. And, because his Fourth Amendment rights were not violated, Sylvester cannot establish the defective performance component of his claim under *Strickland*, based on counsel's "failure" to file a suppression motion.

## C.

Lastly, the petitioner argues that his appellate counsel was ineffective by failing to argue that probable cause did not exist to search the defendant's home. Trial counsel did file a motion to suppress that evidence, arguing that paragraph D of the search warrant affidavit was false; he requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), in his motion to suppress. However, the Court concluded that no such hearing was necessary because the affidavit supplied a sufficient nexus between the place to be searched and the evidence sought even without consideration of the statements that the petitioner challenged as false. Now, the petitioner contends that his appellate counsel should have argued that this Court erred when it found a nexus between the drugs seized and his residence even without the challenged statements.

But this Court had reached the opposite conclusion already, and it is not convinced that the appellate court would reach a different result, even if the petitioner's present argument were presented to it. In reaching its conclusion, this Court relied heavily on Sixth Circuit precedent

upholding search warrants for the homes of known criminals — mostly drug dealers and manufacturers — based on the premise that incriminating evidence is likely to be found at the residences of known drug dealers. *See United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002); *see also United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) (upholding search of residence based on probable cause that the defendant was involved in the manufacture of a controlled substance in another location, and noting that "[i]n *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002), we held, following a long line of precedents, that a sufficient nexus existed to search the residence of a known drug dealer after he had been arrested for possession of cocaine."); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000); *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (stating that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live"). Nothing in the record indicates that the appellate court would have departed from its ample precedent and reach a different result, had the argument been raised on direct appeal.

The petitioner has not demonstrated defective performance or prejudice on this aspect of his motion to vacate the sentence.

### III.

The petitioner has not shown that he was denied his right to the effective assistance of counsel under the Sixth Amendment. The petitioner is not entitled to raise the substantive issues which underlie his several ineffective-assistance-of-counsel claims because he did not raise them on direct appeal, although he could have, and he has not shown cause for his failure to do so or prejudice.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate his sentence [dkt #244]

is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   June 16, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 16, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI